IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE MOISES ROMERO, JR.,<br><br>Defendant. | Case No. 4:24-cr-00019-TMB<br><br>ORDER ON FIRST MOTION *IN LIMINE* TO EXCLUDE CERTAIN FIREARM EVIDENCE<br>[DKT. 140] |

## I.   INTRODUCTION

This matter comes before the Court on Defendant George Moises Romero, Jr.'s Motion *in Limine* to Exclude Certain Firearm Evidence at Docket 140 (the "Motion"). The United States of America (the "Government") opposes the Motion.[1] For the following reasons, Romero's Motion is **DENIED.**

## II.   BACKGROUND

The Court assumes the parties' familiarity with the underlying facts and proceedings in this case. On June 4, 2024, Alaska State Troopers ("AST") arrested Romero in a semi-wooded area.[2] Romero was carrying a red duffle bag.[3] When AST arrived at Romero's location, they shouted commands at Romero, and he complied, walking back toward the officers.[4] He left the red duffle bag he had been carrying where he had been standing.[5] AST placed him under arrest, then AST

---

[1] Dkt. 152 (Government's Response to Defendant's First Motion *in Limine*).
[2] Dkt. 140 (Defendant's First Motion *in Limine*) at 1; Dkt. 152 at 2.
[3] Dkt. 140 at 2; Dkt. 152 at 2.
[4] Dkt. 140 at 2; Dkt. 152 at 2.
[5] Dkt. 140 at 2; Dkt. 152 at 2.

1

Norris retrieved the bag.[6] AST Norris briefly searched the bag for weapons and found none.[7] He asked Romero if Romero wanted him to drop the bag off "at [Romero's] buddy's place" nearby, but Romero did not answer affirmatively.[8] AST Norris then brought the bag to the AST Post "for safekeeping."[9] AST Norris provided Romero a card with instructions on obtaining his property from AST custody.[10]

The next day, AST Norris searched the bag to ensure there were no perishables, hazardous items, or any valuables that AST needed to document for safekeeping.[11] During that search he discovered a Ruger Super Blackhawk .454 Casull revolver.[12] AST Norris stopped his search and applied for a search warrant.[13] The warrant was granted and executed.[14]

Romero now files the Motion arguing that the firearm and all other evidence found inside the red duffle bag should be excluded at trial.[15] He argues that the search was not a lawful search incident to arrest and that seizure of the bag was unlawful.[16] He also argues that search was not a lawful inventory search because it was not done in good faith and there was no evidence that it complied with required AST policy.[17] Last, Romero argues that later-obtained search warrant did not cure the taint of the illegal search.[18]

---

[6] Dkt. 140 at 2; Dkt. 152 at 3.
[7] Dkt. 140 at 2; Dkt. 152 at 3.
[8] Dkt. 168 at 3 (Defendant's Supplemental Filing); Dkt. 168 (Conventionally Filed Exhibit 1: Post-Arrest Videorecording) (hereinafter "Ex. 1").
[9] Dkt. 140 at 2; Dkt. 152 at 3.
[10] Dkt. 140 at 2; Dkt. 152 at 3.
[11] Dkt. 140 at 2; Dkt. 152 at 3.
[12] Dkt. 140 at 3; Dkt. 152 at 3.
[13] Dkt. 140 at 3; Dkt. 152 at 3.
[14] Dkt. 140 at 3; Dkt. 152 at 3.
[15] Dkt. 140 at 6.
[16] *Id.* at 3–4.
[17] *Id.* at 4–5.
[18] *Id.* at 5.

The Government responds in opposition, arguing that Romero was arrested while in possession of the duffle bag, making the search a lawful search incident to arrest.[19] Even if it was not a lawful search incident to arrest, the Government asserts it was a lawful administrative search and provides a copy of applicable policy.[20]

Romero supplemented his Motion with a video of his conversation with AST Norris post-arrest and argues that, because Romero asked to "go to [his] buddy's place to grab [his] legal work," he never refused to answer AST Norris's question about dropping the bag off with a friend.[21]

### III. LEGAL STANDARD

A. *Motions in Limine*

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[22] and may be used to request evidence be either excluded or admitted before trial.[23] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[24]

Motions *in limine* "should not be used to resolve factual issues or weigh evidence."[25] The purpose of a motion *in limine* is to "exclude anticipated prejudicial evidence before the evidence

---

[19] Dkt. 152 at 4–5.
[20] Dkt. 152 at 5–6; Dkt. 152-1 (Department of Public Safety Operating Procedures Manual).
[21] Dkt. 168 at 2–3; Ex. 1.
[22] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21, 2011); *Rsch. Corp. Techs., Inc. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).
[23] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).
[24] *Barnard*, 2011 WL 221710, at *1 (quoting *Black's Law Dictionary* 1109 (9th ed. 2009)); *Rsch. Corp. Techs.*, 2009 WL 2971755, at *1 (similar).
[25] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab., Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010) (citations omitted); *Rsch. Corp. Techs.*, 2009 WL 2971755, at *1 (citations omitted).

3

is actually offered."[26] "A motion *in limine* is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed."[27]

"*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[28] A court's rulings on motions *in limine* are provisional and may be reconsidered during the course of trial.[29] A denial of a motion *in limine* merely means that the court is unable to determine whether the evidence should be excluded outside of the context of trial.[30] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[31]

B. Inventory Searches

Law enforcement must have lawful possession of an item before conducting an inventory search.[32] An inventory search must comply with established procedure and be conducted in good faith.[33] However, "[w]hen the police conduct would have been the same regardless of the officer's

---

[26] *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984) (describing purpose of motion *in limine*).
[27] *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013), *aff'd*, 574 U.S. 418, 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015) (citing *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 968 (9th Cir.2001).
[28] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).
[29] *Barnard*, 2011 WL 221710, at *2 (citing, *inter alia*, *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000)); *Rsch. Corp. Techs.*, 2009 WL 2971755, at *2 (same).
[30] *Barnard*, 2011 WL 221710, at *2; *BNSF*, 2010 WL 4534406, at *1; *Rsch. Corp. Techs.*, 2009 WL 2971755, at *2.
[31] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Rsch. Corp. Techs.*, 2009 WL 2971755, at *1 (citations omitted).
[32] *United States v. Mancera-Londono*, 912 F.2d 373, 376 (9th Cir. 1990) ("[B]efore an inventory search is permissible, the government must have legitimate custody of the property to be inventoried, either as a result of lawful arrest or by some other method.") (quoting *United States v. Jenkins*, 876 F.2d 1085, 1089 (2d Cir. 1989) (alteration in original)).
[33] *United States v. Bowhay*, 992 F.2d 229, 230 (9th Cir. 1993) ("To be valid, an inventory search must conform to a standardized and established local procedure, and must be motivated by a 'concern to inventory [the items] rather than to search for other incriminating evidence.' " (citation omitted) (alteration in original)).

4

subjective state of mind, no purpose is served by attempting to tease out the officer's 'true' motivation."[34]

In *Illinois v. Lafayette*, the Supreme Court held that "it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures."[35] In *Lafayette*, police lawfully arrested an individual and searched a bag in his possession, in accordance with the department's "standard procedure to inventory 'everything' in the possession of an arrested person."[36] The Supreme Court addressed the lawfulness of the search under the Fourth Amendment.[37] The Court explained that "[a]t the stationhouse, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed."[38] The Court gave four governmental interests that support inventory searches: precluding theft by law enforcement, false claims of possession by the arrestee, avoidance of injury from a dangerous instrumentality concealed in "innocent-looking articles," and assistance with verifying the arrestee's identity.[39] An inventory search is reasonable under the Fourth Amendment even if it is not the least restrictive method law enforcement could have employed to achieve its governmental interests.[40]

---

[34] *Id.* at 231 (citing *Horton v. California,* 496 U.S. 128 (1990)).
[35] 462 U.S. 640, 648 (1983).
[36] *Id.* at 642.
[37] *Id.* at 643 ("The question here is whether, consistent with the Fourth Amendment, it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police stationhouse incident to booking and jailing the suspect.").
[38] *Id*. at 646.
[39] *Id.*
[40] *Id.* at 647.

5

## IV. ANALYSIS

As a threshold matter, this Motion appears to be an untimely Motion to Suppress. Motions *in limine* "should not be used to resolve factual issues or weigh evidence."[41] Nevertheless, the Court will address the evidentiary issue it raises on the merits.

First, the Court finds that AST had lawful possession of the bag when AST searched the bag. Law enforcement may reasonably search a container in the possession of a person who had been lawfully arrested.[42] The Court has already ruled that Romero was lawfully arrested pursuant to his warrant.[43] Although Romero set down the red duffle bag before walking backwards toward the officers who then handcuffed him; the red duffle bag had been in his possession when AST contacted him to initiate the arrest. Therefore, it was in AST's "legitimate custody" after Romero was arrested.[44]

The Court also finds that the inventory search conducted by AST Norris complied with established procedures and was conducted in good faith. Pursuant to the Department of Public Safety Operating Procedures Manual ("OPM") 202.30:

> Employees will properly handle or secure property or evidence that comes into their possession. It will be the responsibility of the employee who acquires the property to prepare the necessary reports(s)[ and] identify such property.[45]
>
> * * *
>
> If an employee is unable to complete the proper packaging and delivery of the property . . . prior to the end of his shift he may . . .

---

[41] *Barnard*, 2011 WL 221710, at *1 (citations omitted).
[42] *See Lafayette*, 462 U.S. at 648 (1983).
[43] Dkt. 175 (Order Denying Motion *in Limine*).
[44] *Mancera-Londono*, 912 F.2d at 376; *see Bowhay*, 922 F.2d at 230 (affirming reasonableness of inventory search of "satchel" which defendant had been carrying before arrest but which he "threw . . . under a nearby car" upon seeing law enforcement officer and was subsequently arrested).
[45] Dkt. 152-1 at 2.

temporarily store the property in an "evidence drop." The employee will complete the proper storage process on the following day.[46]

As AST Norris was the officer who seized the duffle bag, it was his obligation to inventory and store the bag pursuant to OPM 202.30. Therefore, the inventory search complied with established procedure.

The Government contends that AST Norris brought the red duffle bag back to the AST post for "safekeeping" and searched it to "ensure there were no perishables, hazardous items, or any valuables that needed documented before placing the red duffle bag into safekeeping."[47] The Court need not inquire into AST's Norris's subjective motivation to determine whether the search was conducted in good faith if "police conduct would have been the same regardless of the officer's subjective state of mind."[48] Because the search complied with relevant policy, the Court finds it would have occurred regardless of AST Norris's subjective motivation for the search and was therefore conducted in good faith. Therefore, the inventory search of the red duffle bag was reasonable under the Fourth Amendment.

As the Court finds that the search of the bag was a lawful inventory search, it need not reach Romero's other arguments that the search was not a lawful search incident to arrest or that the later-obtained search warrant failed to attenuate the taint of an illegal search.[49]

---

[46] *Id.*
[47] Dkt. 152 at 5–6.
[48] *Bowhay*, 922 F.2d at 231.
[49] Dkt. 140 at 3–5.

## V. CONCLUSION

For the foregoing reasons, Romero's Motion *in Limine* at Docket 140 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 26th day of March, 2025.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE